UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RUBY CASTILLO, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-11-93 |
| | § | |
| CITY OF CORPUS CHRISTI, TEXAS, *et al*, | § § | |
| | § | |
| Defendants. | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the court are the motions for summary judgment filed by Defendant City of Corpus Christi (D.E. 24) and Defendant Talosaga Taufaasau (D.E. 25). Also considered are the Plaintiff's response (D.E. 32) and Defendant City of Corpus Christi's reply (D.E. 37). For the reasons set out below, the Court GRANTS the City of Corpus Christi's motion (D.E. 24) and GRANTS IN PART and DENIES IN PART Officer Taufaasau's motion (D.E. 25).

## FACTS

Defendant Talosaga Taufaasau (Officer Taufaasau) is a uniformed police officer with the Corpus Christi Police Department (CCPD) and he drives a marked police unit. During his patrol on April 5, 2009, at approximately 3:00 in the morning, Officer Taufaasau noticed Plaintiff Ruby Castillo driving on Airline Road in Corpus Christi, Texas, at a rate well in excess of the posted speed limit. There is no dispute that Castillo was, in fact, speeding at the time. There is also no dispute that, upon being stopped, Castillo was unable to produce a driver's license or proof of insurance.

Castillo, who was already crying and upset over a family dispute, convinced Officer Taufaasau that she was in dire need of a restroom.  It is at this point that Castillo's account diverges from Officer Taufaasau's.  According to Officer Taufaasau, he began writing Castillo's traffic citations and instructed her to drive to the nearby Stripes convenience store to use its restroom.  According to Castillo, Officer Taufaasau gave her permission to go to her home, saying that he would follow her.  When Castillo passed the Stripes store and continued without stopping, it is undisputed that Officer Taufaasau turned on his lights and siren signaling Castillo to stop.  Castillo saw the lights and heard the siren, but did not stop at the nearest safe place.  Instead, she continued to her residence a short distance away.

Officer Taufaasau states that Castillo got out of her car and he commanded her to stop next to her car.  Instead, she attempted to run inside the house and he intercepted her.  He proceeded to detain her for purposes of requiring her to sign the traffic citation and to explain why she did not stop in response to his lights and siren.  According to Officer Taufaasau, Castillo became belligerent and turned to again try to enter her house.  He grabbed her wrist and she pulled away, dropped to the ground, and rolled around trying to break his grip, cursing at him.  According to Castillo, she "freaked out" and resisted Officer Taufaasau's effort to "contain" her.  She did not deny fighting, kicking, or cussing, stating instead that she does not remember doing such things, except for cussing after she was handcuffed.

After arresting her, Officer Taufaasau took Castillo to Bay Area Hospital to treat scrapes and bruises that she sustained in the scuffle.  Castillo continued to kick and

scream and protest her arrest throughout the time at the hospital.  At the Detention Center intake, Castillo was still kicking and screaming, but denied having sustained any serious personal injury.  Castillo alleges that Officer Taufaasau was manhandling her throughout the post-arrest events, including the trip into the Detention Center.

Castillo was charged with resisting and evading arrest, but those charges were ultimately dropped.  The traffic citation was not dropped and Castillo had not yet paid her fines for speeding, driving without a license, and driving without proof of insurance, as of the date of her deposition in this case.

## CAUSES OF ACTION AND DEFENSES

Castillo has stated claims under 42 U.S.C. § 1983 against both Officer Taufaasau and the City for violation of her Fourth, Fifth, Eighth, and Fourteenth Amendment rights, citing (1) unlawful detention, (2) unlawful arrest, (3) excessive force, and (4) malicious prosecution.  Specifically with respect to the City, she claims that the City ratified Officer Taufaasau's actions.  Castillo alleges that Officer Taufaasau's actions were objectively unreasonable under the circumstances of a minor traffic violation.  She adds state law claims for assault and battery and malicious prosecution against Defendant Taufaasau, only.

Castillo specifically complains of the City's customs, policies, and procedures, which allegedly reflect deliberate indifference with respect to (1) excessive force in routine arrests; (2) excessive force when unnecessary; (3) ignoring the need for training of police officers in the use of force; (4) failure to discipline those police officers who use excessive force; (5) failing to adequately supervise police officers; (6) failure to train

police officers in alternative means of detention; and (7) failure to institute proper policies on the use of force.

The City seeks summary judgment on the unlawful detention and arrest claims on the basis of reasonable suspicion and/or probable cause. With respect to the section 1983 malicious prosecution claim, the City asserts that there is no such federal cause of action. The City further seeks judgment that there is no evidence of an official custom or policy that causally links the City to any violation of Plaintiff's civil rights by Officer Taufaasau. Officer Taufaasau seeks summary judgment on the basis of limitations or laches and qualified immunity based upon probable cause, which undercuts the claims of unlawful detention, unlawful arrest, and malicious prosecution. Officer Taufaasau also seeks summary judgment that the federal malicious prosecution claim does not exist.

## DISCUSSION

### A. Limitations as to Officer Taufaasau

The incident occurred on April 5, 2009. The Complaint was filed April 5, 2011. D.E. 1. But it did not name Talosaga Taufaasau as a defendant. Instead, it named "Officer Tanguma," described as the arresting officer in the events that took place "on or about April 21, 2009." On June 2, 2011, Castillo sought and obtained leave to amend her Complaint to "correct her spelling" and name Talosaga Taufaasau in place of "Officer Tanguma." D.E. 12. On July 12, 2011, Officer Taufaasau filed his Answer, appearing in this case without official summons and service and addressing the traffic offense and stop of Castillo on "April 5, 2009." According to Officer Taufaasau, he was not aware of the claims made against him until July 11, 2011.

Officer Taufaasau claims that the two-year personal injury statute of limitations applies. *E.g.*, *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994). Castillo does not dispute that contention. The evidence shows that when Officer Taufaasau was named in this case, the two-year limitations period had expired by almost two months. When he became aware of the case, limitations had expired by more than three months.

Thus the issue for the Court is whether the naming of "Officer Tanguma" allows relation-back of the claims or expands the period of limitations to include the service period of 120 days after the date the Complaint was filed pursuant to Fed. R. Civ. P. 4(m) and 15(c). When an amendment changes the identity of a party and the plaintiff relies on the relation-back principle, the plaintiff must first demonstrate that the new claim arose out of the conduct set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B), (C). That requirement is clearly met. Second, the plaintiff must show that the new defendant received notice within 120 days after the Complaint was filed. Rule 4(m). That requirement is clearly met, as Officer Taufaasau admits that he was notified approximately 97 days after the Complaint was filed.

Third, the plaintiff must show that the new defendant would not be prejudiced in his defense. Rule 15(c)(1)(C)(i). The only evidence regarding prejudice to the defense is Officer Taufaasau's contention that he has been denied the benefit of a videotape at the City Detention Center that would have shown Castillo's claims to be baseless. By his own admission, however, that videotape evidence was routinely destroyed as a matter of course thirty (30) days after the events that were recorded. Thus, there is no difference between filing against Officer Taufaasau two years after the incident or two years and 97

days after the incident.  In the absence of evidence of prejudice, the Court finds that the third requirement is met.

The crux of the issue for the Court lies in the fourth requirement:  that the new defendant "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity."  Rule 15(c)(1)(c)(ii).  This requirement, in the case of a misnomer or misidentification, has been interpreted to be met if the new defendant gains the mistaken identity information within the Rule 4(m) 120 days.  If, however, the naming of the original defendant was a "John Doe" party with no real idea of who was intended to be sued, relation-back is not available.  *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).

Castillo argues that her pleading involved a spelling error of a difficult name, whereas Officer Taufaasau treats the pleading as a "John Doe" complaint.  While "Tanguma" and "Taufaasau" share only a few common letters, it was an effort to name the arresting officer, as the factual allegations of the Complaint made clear.  While the reference to events "on or about April 21, 2009" is more than a few days off from the actual date of the subject events, April 5, 2009, and could conceivably have caused additional confusion for Officer Taufaasau, Officer Taufaasau and his counsel had no difficulty describing the correct events as having occurred on April 5, 2009 in his Answer, filed just 24 hours after his admitted notice.  D.E. 17.

Because Castillo clearly intended to sue the arresting officer and because the allegations were clear but for the confusion over the name, this presents a case of misnomer.  Officer Taufaasau received notice within the 120-day time period and was

able to answer with full knowledge of the subject matter of the lawsuit. The Court DENIES Taufaasau's request for summary judgment on limitations.

### B. Federal Cause of Action for Malicious Prosecution

Defendants have requested summary judgment on Castillo's malicious prosecution claims made through 42 U.S.C. § 1983. It is clear that the Fifth Circuit has held that there is no federal cause of action for malicious prosecution. *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S.Ct. 2343 (2010); *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (*en banc*), *cert. denied*, 543 U.S. 808, 125 S.Ct. 31 (2004).

Castillo argues that there is a circuit split and that the "dust has not settled" on this issue. The Court finds that the Fifth Circuit's expression on the issue is clear and that this Court is not empowered to resolve circuit splits or interpret Supreme Court precedent contrary to the Fifth Circuit's interpretation. If Castillo has a Fourth Amendment claim, she may pursue it as a Fourth Amendment claim but not as a malicious prosecution claim. Thus the Court GRANTS summary judgment in favor of Defendants that the § 1983 claim for malicious prosecution must be denied as a matter of law for failure to state a claim upon which relief may be granted.

### C. Probable Cause and Qualified or Official Immunity

Castillo's claims for unlawful detention and unlawful arrest depend upon her ability to demonstrate that Officer Taufaasau did not have probable cause. Defendants seek summary judgment based on qualified or official immunity, claiming that Officer Taufaasau did, in fact, have a reasonable suspicion and probable cause for his actions.

Pursuant to Castillo's own admissions, she had been speeding and was emotionally upset and crying when Officer Taufaasau initially pulled her over. She cannot dispute Officer Taufaasau's testimony that she failed to produce a driver's license or proof of insurance when Officer Taufaasau asked for them. When she drove away, she did so knowing that Officer Taufaasau did not have her driver's license and had not yet issued her traffic citation and was planning to follow her in his car. Castillo knew Officer Taufaasau was a uniformed officer driving a marked police cruiser, yet she failed to stop the second time he attempted to pull her over with his lights flashing and siren sounding. She further admits to "freaking out" and trying to wrestle away from his grip when he began to arrest her.

"Once raised, a plaintiff has the burden to rebut the qualified immunity defense. We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005). The Fifth Circuit has described the test as follows:

> Qualified immunity protects officials acting under color of state law "from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The clearly established part of the test is a high bar for a plaintiff to meet as he must show that "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates a right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). An officer is entitled to qualified immunity even if he violated a constitutional right, so long as his actions were objectively reasonable.

> *Spann v. Rainey*, 987 F.2d 1110, 1114 (5th Cir. 1993). Unless all reasonable officers in the defendants' circumstance would have known that the conduct in question violated the constitution, the defendant is entitled to qualified immunity. *Thompson v. Upshur Cty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). To overcome a qualified immunity defense, the plaintiff has the burden of showing that the actions were not objectively reasonable and that they violated clearly established law. *Burns–Toole v. Byrne*, 11 F.3d 1270, 1274 (5th Cir. 1994).

*Batiste v. Theriot*, 2012 WL 89414, *2 (5th Cir. January 10, 2012). To avoid summary judgment on a qualified immunity defense, the plaintiff must show more than "mere allegations." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

Specifically with respect to traffic stops, detention is reasonable and based upon probable cause if a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). There is no question that Castillo was speeding when Officer Taufaasau originally stopped her. There is no question that she failed to produce a driver's license and proof of insurance. Each of these matters is a traffic violation providing probable cause for detention and arrest. *See* Tex. Transp. Code §§ 521.025, 545.351(a), 545.352, and 601.191(a).

Castillo argues that the probable cause justifying the initial traffic stop for speeding had no relationship with later conduct because the "tie" was severed when Officer Taufaasau allowed Castillo to drive to a restroom to take care of what appeared to be an urgent need (whether that restroom was in her house or the Stripes convenience store). Castillo suggests that Officer Taufaasau's permission to use the restroom indicated that he had made a determination that he would not further detain Castillo and

that she was then free to go.

This argument does not comport with the undisputed facts. Castillo knew that she was interrupting the issuance of the traffic citation when she requested permission to find a restroom. Otherwise, she would not have required his permission, for which she admitted being thankful. Furthermore, Castillo knew that Officer Taufaasau was going to follow her to her restroom destination. According to her own testimony, she gave him directions to her house—where she was going to drive. Clearly she was still subject to detention at that point.

Even if the detention had ended as she drove off to the restroom, there is no question that she failed to stop when Officer Taufaasau, following her, turned on his lights and siren to signal her to pull over again. Castillo knew Officer Taufaasau was a uniformed police officer, knew he was following her in connection with her traffic violation, knew that he turned on his lights and sirens, but made the decision not to stop when directed to do so. "A person commits an offense if the person intentionally flees from a person he knows is a peace officer or federal special investigator attempting lawfully to arrest or detain him." Tex. Penal Code § 38.04(a). The failure to stop when signaled presents probable cause justifying a new detention and arrest. *See United States v. Lee*, 188 Fed. Appx. 326, 328, 2006 WL 1977437, *1 (5th Cir. 2006) (citing Tex. Penal Code § 38.04; and *Ester v. State*, 151 S.W.3d 660, 664 (Tex.App.—Waco 2004)); *E.g.*, *Wright v. City of St. Francis*, 95 Fed. Appx. 915, 931, 2004 WL 838181, 13 (10th Cir. 2004) (driver's failure to stop triggered probable cause when she wanted to drive a few

more blocks to her home rather than stop when signaled); *Nelson v. Riddle*, 217 Fed. Appx. 456, 460 (6th Cir. 2007).

Castillo has failed to satisfy her burden to show that Officer Taufaasau's conduct in detaining and arresting her was objectively unreasonable. Because Officer Taufaasau had probable cause supporting his actions, the Defendants are entitled to qualified immunity. The Court GRANTS summary judgment to the Defendants on the causes of action for unlawful detention and unlawful arrest.

D.  **State Law Claim for Malicious Prosecution Against Officer Taufaasau**

Officer Taufaasau initiated charges against Castillo for: (1) speeding; (2) driving without a driver's license; (3) driving without proof of insurance; (4) evading arrest; and (5) resisting arrest. Castillo claims that these charges support her cause of action against Officer Taufaasau under state law for malicious prosecution. A claim for malicious prosecution requires proof of seven elements: (1) a criminal prosecution against the plaintiff; (2) the defendant initiated the prosecution; (3) the prosecution terminated in the plaintiff's favor; (4) the plaintiff was innocent of the charges; (5) the defendant lacked probable cause to initiate the prosecution; (6) the defendant acted with malice; and (7) the plaintiff suffered damages. *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006).

With respect to the first three charges arising from the initial traffic stop, Castillo's malicious prosecution claim is defeated by the fact that the prosecution has not terminated in Castillo's favor, Castillo is not innocent of the charges (as she admitted to them in her own testimony), and because Officer Taufaasau clearly had probable cause,

as discussed above. Thus the Court GRANTS summary judgment in favor of Officer Taufaasau on any malicious prosecution claim made with respect to the prosecution for speeding, driving without a license, and driving without proof of insurance.

Castillo argues that there was no probable cause for the second stop and thus no "arrest" that she could be said to have evaded or resisted. This argument fails because, as discussed above, there was probable cause for the arrest based upon Castillo's failure to stop during Officer Taufaasau's second effort to stop her. The Court GRANTS summary judgment in favor of Officer Taufaasau on Castillo's malicious prosecution claim regarding the prosecution for evading arrest.

Under the Texas Penal Code, the crime of resisting arrest is defined as follows:

> A person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another.

Tex. Penal Code § 38.03(a). An unlawful arrest does not provide a defense to the crime of resisting arrest. *Id.* § 38.03(b).

Officer Taufaasau testified that, when he got to Castillo's house, she tried to run inside and he intercepted her. He tried to arrest her, but she fought back, kicking, screaming, falling to the ground, and trying to wrestle away. According to Castillo, she approached Officer Taufaasau calmly to inquire why he put on his lights and siren and the next thing she knew, he had wrestled her to the ground. She admitted to trying to tug away because she did not want to be contained. She does not remember kicking, but was

"moving around." Castillo's admissions are sufficient to support probable cause for resisting arrest.

The Court GRANTS Officer Taufaasau's motion for summary judgment on Castillo's claim for malicious prosecution regarding the prosecution for resisting arrest. Officer Taufaasau did not seek summary judgment on Castillo's federal claim for excessive force or state law claim for assault and battery. Those claims remain for trial.

### E. The City's Liability for Officer Taufaasau's Actions under § 1983

In order to establish a constitutional cause of action against a municipality under 42 U.S.C. § 1983, a plaintiff must prove that: (a) some right protected by the United States Constitution was violated; and (b) that violation was caused by a governmental custom or policy statement, ordinance, regulation, or decision officially adopted and promulgated by the municipality's policymakers. *Monell v. New York Dep't of Soc. Services*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978). A municipality may be held liable under § 1983 only for acts which the municipality has officially sanctioned or ordered. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S. Ct. 1292, 1298 (1986). A direct causal link between the policy or custom and the alleged constitutional deprivation is required. *Monell*, 436 U.S. at 690. The policy or custom must be the "moving force" behind the violation. *Rivera v. Houston Indep. Sch. Dist.*, 349 F. 3d 244, 247 (5th Cir. 2003).

Castillo alleges that the City sanctioned the custom, practice and/or policy of (1) excessive force in routine arrests; (2) excessive force when unnecessary; (3) ignoring the need for training of police officers in the use of force; (4) failure to discipline those police

officers who use excessive force; (5) failing to adequately supervise police officers; (6) failure to train police officers in alternative means of detention; and (7) failure to institute proper policies on the use of force. The City challenges these allegations, stating that there is "no evidence" to support them. In addition, the City offered affidavits and policy manual exhibits regarding these issues. The City's evidence includes:

(1) A General Manual applicable to CCPD officers, which details (a) field officer selection, training, and supervision, (b) the use of force policy, (c) the warrantless arrest policy and probable cause analysis, and (d) conduct and performance policy. Defendant's Exhibits 2 and 7.

(2) The training provided to CCPD officers with respect to the use of force complies with TCLEOSE standards and the City has a number of policies in effect that limit the use of force and require investigations into the use of force, including claims of excessive force. Defendant's Exhibit 6.

(3) Officer Taufaasau was properly supervised on April 5, 2009 when he arrested Castillo and the chain of command regarding supervision was intact. Defendant's Exhibit 6. This includes Officer Taufaasau's completion of a Resistance/Injury/Taser/O.C. Report regarding Castillo, which was signed by his supervisor and reviewed at four (4) additional levels of command.

(4) Officer Taufaasau received his training and licensing through a TCLEOSE-certified program, including courses in use of force and additional field training beyond what is required by TCLEOSE. Defendant's Exhibit 7.

Castillo offered her own summary judgment evidence in the form of documents

alleging excessive force against CCPD officers, including Officer Taufaasau, and instances in which no disciplinary action was taken. The City's objections to the following exhibits are sustained: 4, 5, 6, 7, 16, 20, 21, and 22. The evidence set forth in these exhibits is excluded from consideration. Castillo's remaining evidence supplies nine (9) separate instances of excessive force claims, some accompanied by claims of a failure to discipline:

> Plaintiff's Exhibit 8: September 3, 2002 (C. Marchand) affidavit regarding a CCPD police officer using excessive force against a husband in response to a domestic abuse call. The City investigated this complaint and found it unsubstantiated. D.E. 37-2. Affidavits provide a controverting account of the events involved in the complaint. D.E. 37-11, 12, and 13. (Complaint 1, reported and investigated).
>
> Plaintiff's Exhibit 9: September 15, 2005 (A. & O. Mesa) declaration regarding a CCPD police officer using excessive force against two men outside of a nightclub. The City has shown that this complaint was never communicated to CCPD. D.E. 37-2. Even so, affidavits provide a controverting account of the events. D.E. 37-14, 15, and 16. (Complaint 2, not reported. Disputed).
>
> Plaintiff's Exhibit 10: July 11, 2003 (D. Dietrich) declaration that an off-duty City police officer beat a man at a concert and other on-duty City police officers did not file a report or arrest the off-duty officer. The City investigated this complaint and found that the witnesses did not see who started the fight. The officer complained of was off-duty and did not appear to have exercised police authority. The internal investigation found that disciplinary action was not warranted. D.E. 37-17, 18, and 19. (Complaint 3, reported and investigated).
>
> Plaintiff's Exhibit 11: September 17, 2005 (J. Garcia) declaration that numerous CCPD officers beat a suspect before booking him. The Internal Affairs investigation found that the officers, both those involved and the detention officer disputed the claim. D.E. 37-20, 21, 22, 23, and 24. (Complaint 4, reported and investigated).
>
> Plaintiff's Exhibit 12: April 16, 2004 (R. Milligan) declaration that numerous CCPD officers beat a suspect during an arrest. This claim was disputed by

the officers. D.E. 37-37, 38, 39. (Complaint 5, disputed in affidavits signed in 2006).

    Plaintiff's Exhibit 13: December 10, 2005 (R. Galvan) declaration that a CCPD officer injured a suspect during an arrest. The City has demonstrated that this complaint was never communicated to CCPD. D.E. 37-2. The officers at the scene denied the substance of the complaint. D.E. 37-25, 26, 27. (Complaint 6, not reported. Disputed).

    Plaintiff's Exhibit 14: June of 2002 (V. Zamudio) declaration that CCPD officers beat a man during an unlawful arrest and then conferred to fabricate a cover-up story. This complaint was disputed by the officers on the scene. D.E. 37-28, 29. Plaintiff's Exhibit 15: June of 2002 (J. Zamudio) declaration that a CCPD officer used excessive force against the brother of the man making the complaint in Plaintiff's Exhibit 14, without any accompanying arrest or criminal charge. This complaint was disputed by the officers on the scene. D.E. 37-28, 29. (Complaint 7, disputed in affidavits signed in 2006).

    Plaintiff's Exhibit 17: October 21, 2005 (R. Morales) declaration that a CCPD officer used excessive force on a man during a traffic stop. The City has demonstrated that this complaint was never communicated to the CCPD. D.E. 37-2. The arresting officer disputes the claims. D.E. 37-33. (Complaint 8, not reported. Disputed).

    Plaintiff's Exhibits 18 and 19: March 4, 2004 (A. & J. Tedesco) deposition transcripts containing testimony that CCPD officers used excessive force against a man and did not charge him with any crime. The claims were disputed and Internal Affairs concluded that they were not substantiated. D.E. 37-2, 34. (Complaint 9, reported and investigated).

The Court's task is not to determine whether the complaints are true or even whether the complaints raise a fact question as to whether the excessive force alleged is true. The current task is to determine whether, if the complaints were found by a jury to be true, they would support a jury's affirmative determination that the City had a policy, custom, or official decision reflecting deliberate indifference to police officers' use of excessive force.

Three (3) of the nine (9) complaints at issue were not communicated to CCPD. Having not been communicated, they cannot serve as evidence that the City was complacent about the excessive force issue, much less that the City was deliberately indifferent to the constitutional rights of the complainants. The Court is left with six (6) complaints over a three-year period ending in 2005. The subject incident took place in 2009. Four (4) of the incidents had been investigated, a matter that weighs in favor of the City when a pattern of unlawful conduct is alleged. *Peterson v. City of Fort Worth*, 588 F.3d 838, 852 (5th Cir. 2009).

The Plaintiff has failed to offer any statistical analysis to support a finding that these complaints indicate a pattern of any sort. Without evidence of statistical significance of the complaints, the complaints, alone, do not prove anything beyond the fact that some complaints were made. *Peterson, supra*, at 851 (27 complaints of excessive force over 4-year period legally insufficient to establish a pattern to defeat a summary judgment motion); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (11 complaints of warrantless entry not sufficient to establish a pattern to defeat summary judgment). The statistical evidence provided by the City supports the conclusion that the number of these complaints does not satisfy the burden to prove a custom, policy, or official decision.

The City has further shown that all of the complaints of excessive force involve disputed issues of fact. Castillo has not shown that there was any procedural defect in the manner in which the investigations were performed or the City's ultimate treatment of the claims as unsubstantiated. A law enforcement agency does not ratify unconstitutional

conduct simply by believing the officer's plausible denials that it occurred. *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986). Castillo's summary judgment evidence does not raise a disputed issue of material fact as it is incapable of leading to a finding of a custom or policy of deliberate indifference. Deliberate indifference requires proof that a municipal actor intentionally disregarded a known or obvious consequence of his or her action. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Castillo has failed to show deliberate indifference.

Furthermore, adequate training of police officers in response to a section 1983 complaint may be demonstrated if the law enforcement agency's training meets state standards and that the officer completed that training. *Connor v. Travis County*, 209 F.3d 794, 798 (5th Cir. 2000); *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992). The City provided ample summary judgment evidence to that effect. Castillo did not submit evidence that the training was insufficient or non-compliant with state standards. Castillo has failed to show a failure to train.

A failure to supervise claim requires proof: (1) that the defendant officer's supervisor failed to supervise the defendant; (2) that there is a causal connection between the alleged failure to supervise and the alleged violation of the plaintiff's constitutional rights; and (3) the failure to supervise constitutes a deliberate indifference to plaintiff's constitutional rights at a policy level. *E.g.*, *Brumfield v. Hollins*, 551 F.3d 322, 332 (5th Cir. 2008). The City's summary judgment evidence shows that an appropriate chain of command for supervision was in place and working at the time of the incident. Castillo

did not offer any evidence to the contrary. Castillo has failed to show failure to supervise.

Castillo has failed to submit the necessary summary judgment evidence to raise a disputed issue of material fact on her claims of a policy, custom, or official decision that shows the City's deliberate indifference and makes it causally responsible for Officer Taufaasau's conduct. The Court thus GRANTS summary judgment to the City on those claims.

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendant City of Corpus Christi's motion for summary judgment in its entirety and the Defendant City is entitled to judgment that Castillo take nothing. The Court DENIES Defendant Talosaga Taufaasau's request for summary judgment on limitations. The Court GRANTS the motion for summary judgment as to the claims against Defendant Taufaasau for unlawful detention, unlawful arrest, federal malicious prosecution, and state malicious prosecution. Remaining for trial are the claims against Defendant Taufaasau for state law assault and battery and federal claims for use of excessive force.

ORDERED this 16th day of April, 2012.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE